MOSES WILLIAMS & another *vs.* RICHARDS BRADLEY & others.

If a testator has manifested in his will a clear general intent to make an equal distribution of his estate, by giving equal shares thereof to his five children who survive him, and to the children of a deceased child the share which their parent would have received if living, and in pursuance of this general intent has divided his estate into six equal parts, two of which are given to two of his children absolutely, and the other four are devised in trust, with directions to the trustees to pay over three fourths of the net income thereof from time to time, quarter-yearly or otherwise as is most convenient, to his three other children respectively, and the other fourth to the children of his deceased child, and with a further disposition of the principal fund of which the income was thus given to his grandchildren, in case they should all die without issue, a subsequent provision in the will, authorizing the trustees, if they should at any time deem it inexpedient to pay to either of said children or grandchildren the income which might then be coming to them, in their discretion to pay only so much thereof to any such child or grandchild as they might deem expedient, gives no power to the trustees to withhold entirely any portion of such income and add it to the principal fund, but only gives to them a discretion to regulate and control the time and mode of payment of the income, in the exercise of which they are subject to the supervision of this court. And no equivocal language, which may have another reasonable explanation, will be so construed as to defeat the bequest.

If a testator directs his estate to be divided into shares, some of which he devises in trust with directions to the trustees to pay over the income thereof to persons therein named, the amount of income received by the executor, and paid over by him to the trustees, is to be disposed of in the same manner as the income received by the trustees afterwards.

BILL IN EQUITY, in the nature of a bill of interpleader, in which the plaintiffs are two of the four trustees under the will of John D. Williams, and the defendants are all the parties interested in a fund therein created, including the other two trustees.

The bill alleged that John D. Williams, having executed his will April 24, 1841, and a codicil thereto April 25, 1846, died in August 1848, and his will and codicil were duly proved in the September following. The portions of the will material to the present case were as follows:

" *Item* 2. Having given my sons, and my late daughter Mrs.

Merry (now deceased) the sum of ten thousand dollars, which was charged to them as an advancement, and wishing to do equal and exact justice to all my children, and my daughter Hannah Weld French having received but one thousand dollars only, I do now give my said daughter Hannah Weld French the further sum of nine thousand dollars, to be at her own disposal; and, for the like reason, I do give my youngest daughter Mary Elizabeth Williams, the sum of ten thousand dollars, to be at her own disposal, she not having received any part of my estate as yet. And I do moreover hereby further will and direct, that interest at the rate of five per cent. from and after 1 Jan. A. D. 1838, until the time of payment, be added to and paid to my said two daughters (by my said executors hereinafter named) on said legacies last aforesaid.

"*Item* 3. I give to my brothers Moses Williams and Aaron Davis Williams, and to my sons George Foster Williams and David Weld Williams, and to the survivors or survivor of them, their executor or administrator, the sum of six thousand dollars, in trust to pay over and distribute the same equally to and among the creditors of my son John Davis Weld Williams, in proportion to their respective demands and claims; *provided* all the said creditors shall, within eighteen months after the probate of this will, accept said donation, and in consideration thereof exonerate, release and forever discharge my said son from all debts, dues and demands; and *provided*, moreover, that this devise or legacy shall be null and void if my said son John shall have previously deceased, or, if living, shall elect not to have the same take effect: in which event, or in case said creditors shall decline to accept the same on the condition proposed, then the said sum of six thousand dollars shall be held by my said executors hereinafter named as part of my estate, and distributed as hereinafter provided.

"*Item* 4. I will, order and direct that all the estate of which I may die seised or possessed, both real, personal and mixed, of what kind or quality soever, or wherever to be found, be divided into six equal parts or shares." . . . . . .

"*Item* 5. And one of the said six parts or shares of all ·

said estate divided as aforesaid, I do give, devise and bequeath to my son George Foster Williams, to him and to his heirs and assigns forever.

" *Item* 6. Another sixth part or share of all my said estate divided as aforesaid, I do give, devise and bequeath to my son David Weld Williams, to him and to his heirs and assigns forever.

" *Item* 7. And the remaining four sixth parts or shares of all my estate divided as aforesaid, I do give, devise and bequeath the same to my said brothers Moses Williams and Aaron Davis Williams, and to my sons George Foster Williams and David Weld Williams, and to the survivors or survivor of them, their heirs, executors, administrators and assigns, to and for the uses, trusts and purposes, and on the trusts hereinafter fully declared and expressed, and none other." (The trusts are copied at length in the opinion.)

" And I do moreover hereby authorize my said trustees herein named, and such other trustees who shall be legally authorized to act as such, from time to time to demise and lease, upon such terms and conditions as they think reasonable, the whole or any part of my said real estate given in trust as aforesaid ; or, if they deem it more expedient, to make an absolute sale of the whole or any part of the said real estate or trust property, at public auction or at private sale, at and for such sum or sums, price or prices, as they deem proper, with full power and authority (without applying to any court for that purpose) to sign, seal, execute, acknowledge and deliver any lease or leases for any term of years, or any deed or deeds which will be sufficient and effectual in law to pass a complete, absolute and perfect title in fee simple to all or any part of said real estate, devised in trust as aforesaid, to such purchaser or purchasers ; or to make any deed or deeds, upon condition or conditions to be afterwards avoided or performed, which my said trustees may be advised are necessary and proper to be executed ; with full power to make purchases and exchanges, to take and receive deeds, to convert real into personal, and personal into real estate, and that again to exchange and reëxchange, as to them

seem best for all concerned; it being my express will and inten·
tion to give my said trustees, and those who may be made such,
the same dominion and control over said trust property as I
now have, to use and manage with it according to their best
skill and judgment and discretion : *provided,* however, that all
moneys received for sales, all property purchased by the pro-
ceeds of any sold or exchanged, and all property received in lieu
of that sold by the authority aforesaid, shall be held for the like
trusts and purposes, and to the like uses, and none other, as that
parted with, sold or exchanged, and as hereinbefore fully de-
clared, and none other."

The bill further alleged that the testator's estate was divided
into six parts, as directed by the will, and the plaintiffs, and two
of the defendants, were duly commissioned as trustees ; that
the net amount of the share devised for the benefit of the chil-
dren of the testator's deceased daughter, Sarah Ann Merry, was
$231,375.12, of which $6356.52 accrued as rents and profits
while in the executors' hands ; that Robert D. C. Merry, one of
the three children of Sarah Ann, died under age and without
issue, before the testator's death ; that Hannah Weld Merry,
another of the children of Sarah Ann, became of age August
27, 1850, and until that time the trustees applied so much of
the income of that share as was necessary and proper for her
support, but said amount did not equal one half of the income
of that share by the sum of $5346.88 ; that said Hannah mar-
ried Thomas B. Frothingham, one of the defendants, in May
1853, and died June 4, 1854, without issue, and her husband
has since been appointed her administrator; that from the time
of her becoming of age until her marriage, the trustees did not
pay over to her one half of the income of that share by the
sum of $12,738.76 ; that after her marriage they paid to her one
half of such income, with the exception of the sum of $2574.57,
which they were prevented from paying to her by reason of her
ncapacity to receive and receipt for the same, during the last
part of her life; making in all $20,660.21, of the accumulated
surplus of income on her half of that share ; that Sarah A. W.
Merry, the third of the children of Sarah Ann, became of age

January 26, 1855; and until that time the trustees applied so much of the income of that share as was necessary and proper for her support, but said amount did not equal one half of the income of that share by the sum of $34,291.94; that said Sarah married Richards Bradley, one of the defendants, in April 1856, and has two children, who are also parties to the bill, appearing by their guardian *ad litem;* that from the time of her becoming of age until her marriage the trustees did not pay over to her one half of the income of that share by the sum of $11,515.07; making in all $45,807.01, of the accumulated surplus of income on her half of that share.

The defendants Frothingham and Bradley now claimed that said accumulations, together with the amount which accrued as rents and profits while the estate was in the executors' hands, should be paid over to them.

There was no suggestion in the bill, or in any of the answers of those contingently interested in the remainder of the principal fund, of any good reason why the trustees should not, in the exercise of a sound discretion, pay over to Mrs Bradley the accumulated income upon her portion of the fund; but the case was put upon the ground that under the will the trustees had the right to withhold such portion of the income as they might deem expedient and add it to the principal fund.

*J. Parker & H. G. Parker,* for Richards Bradley and wife.

*B. R. Curtis,* for T. B. Frothingham.

*J. L. English & N. T. Dow,* for different parties contingently interested in the remainder of the principal fund.

BIGELOW, C. J.    This is a suit in equity, in the nature of a bill of interpleader, in which the plaintiffs, as two of the trustees under the will of John D. Williams, seek for the aid and instruction of this court concerning their duty in the performance of certain trusts which are devolved on them under said will, and ask that the parties interested in the subject matter may interplead and set forth their respective claims, so that the same may be adjusted and settled.    The necessary parties have appeared and answered to the bill, and the question arising on the construction of the will, which has given rise to doubt and controversy

as to the duty of the trustees in the execution of the trust, has been fully presented to our consideration by the learned counsel who represent the different parties in interest.

The decision of the case depends on the interpretation which ought to be put on a provision contained in the seventh clause of the will. The testator having in previous clauses directed that all his estate should be divided into six equal parts or shares, one of which he gives absolutely to each of his sons George Foster and David W., by said seventh clause devises the four remaining shares to the trustees, to be held by them on the following trusts, namely:

" *In trust*, to demise, lease and manage the real estate, and invest and keep invested the personal estate ; and from time to time to collect and receive the rents and income of the real estate, and the dividends, accumulation, interest and increase of said personal estate ; and after defraying all necessary charges of repairing, upholding, insuring, managing, preserving and taking care of said trust property, and all other expenses necessarily incident to the management of said trust property, then to distribute and divide the net gains and income of the whole of said trust property into four equal parts or shares ; then,

" *In trust*, from time to time (quarter-yearly or otherwise, as is most convenient) to pay over to my son John Davis Weld Williams one of the said quarter parts or shares, or one of the said six parts or shares, of the net income, rent and interest of all my estate, for and during the term of the natural life of my son John Davis Weld Williams ;

" *In trust*, in the second place, in like manner, to pay over to my daughter Hannah Weld French, wife of Jonathan French, one of the said quarter parts or shares, or one of the six parts or shares, of the net income, rent and interest of all my estate, for and during the term of the natural life of my said daughter Hannah W. French ;

" *In trust*, in the third place, in like manner, to pay over to my daughter Mary Elizabeth Williams one of the said quarter parts or shares, or one of the said six parts or shares, of the net income, rents and interest of all my estate, for and during the

term of the natural life of my said daughter Mary Elizabeth Williams;

" *In trust*, in the fourth place, to pay over in like manner, and to distribute the remaining fourth part or share, or one sixth part or share, of the net income, rent and interest of all my said estate, equally to and among the children of my deceased daughter Sarah Ann, to wit, Hannah Weld Merry, Robert Davis Coolidge Merry, and Sarah Ann Williams Merry, for and during the terms of the natural life of my said grandchildren; and in case of the decease of either, leaving issue, to apply the said income, rent and interest of said deceased child's share equally to the support and maintenance of such issue or children during the life of the survivors, and until the final distribution of said share, as hereinafter provided; but, in case such deceased grandchild or children leave no issue, then the said share of said rent, income and interest of such deceased grandchild or grandchildren is to be equally divided to and among his or her surviving brother or sister; and, in case all of my said grandchildren by my daughter Ann shall all decease without issue, then the said share remaining, of capital and interest, is to be equally divided to and among my own sons and daughters, and those who legally represent them; it being my express will and intention, that such shares as fall to those of my children whose shares are hereby devised in trust shall be taken and held by my trustees herein named, in the same way and manner the other property is held which is hereinbefore devised in trust. And moreover, on the decease of the last survivor of my said grandchildren by my daughter Ann, leaving issue, then,

" *In trust*, to grant, surrender and convey to such issue, and equally to all the children of my said grandchildren Hannah, Robert and Sarah, the whole of said part or share so devised in trust as aforesaid, with all interest or accumulation which may happen thereon by accession or otherwise under this will, to them and to their heirs and assigns forever. And

" *In trust*, lastly, immediately upon the decease of each of my own children whose shares of my estate are devised in trust as aforesaid, leaving issue or children, then to grant, surrender and

convey to such child, children or issue, to be equally divided between them, all such share or shares devised in trust for the parent's use as aforesaid, with all capital, interest or accumulation thereof under the provisions of this will, so as to vest a complete and perfect title to the same in such issue, child or children, to their own proper use, and their heirs and assigns, forever. And upon the decease of either of said sons or daugh ters whose shares are herein devised in trust, without leaving issue or children, then I will and direct that such deceased son's or daughter's share, with all interest or accumulation thereof, shall be equally divided to and among my other children then living, and those who legally represent those deceased, in such proportions as the laws of the Commonwealth, for the time being, would distribute the same, to them and their respective heirs and assigns forever; *provided,* however, that the share or shares that would fall to any of my children or grandchildren, whose shares are herein devised in trust, shall in like manner be held in trust: and they are hereby declared to be devised to my said trustees herein named, upon the same trusts, and for the same uses and purposes, as if the same had been originally included in the shares devised in trust as aforesaid on the first division; and finally to be distributed and divided as hereinbefore fully provided.

" And forasmuch as the property so devised in trust as aforesaid is intended for the comfortable support and maintenance of my said children and grandchildren, for whose benefit said trust has been created, but which property is not intended to be placed at risk or hazard in trade, speculation or otherwise, or made subject to any of the casualties, accidents or misfortunes of trade or business,

" It is therefore my intention, and I do therefore will, order and direct that neither the capital nor the interest or income of the property, during the trust aforesaid, shall be subject to sale, alienation, pledge, mortgage, attachment, lien, or any other charge or incumbrance whatsoever, created or caused or procured by, or through the instrumentality of, any of my said children or grandchildren, or on their account, or by the

procurement or through the agency of any creditor or creditors of any of my said children or grandchildren, or any husband or husbands they now have, or may in future have; but, on the contrary, the said property shall be held upon strict trusts, as aforesaid, and never diverted from the said uses and purposes herein declared, and fully declared, until the said trusts are accomplished according to their true meaning and intent.

" And I do moreover will, order and direct, that all the payments hereinbefore directed to be made to my daughters and granddaughters shall from time to time be made to them *personally*, upon their sole and separate receipts, free from the control, influence or interference of any husbands they now have, or may in future have. The foregoing provisions being made for their sole and separate and exclusive use, their receipts, notwithstanding their coverture, are to be taken and deemed a sufficient discharge in law to my executors or trustees, or whomsoever else shall be charged with the execution of this will.

" And in regard to the rent, income and interest of the several portions of my estate herein devised in trust as aforesaid for the benefit of my respective children and grandchildren, if my trustees shall at any time or times deem it inexpedient to pay to either of said children or grandchildren the rent, income and interest which may be then coming to him or her, I authorize my trustees, in their discretion, to pay only so much thereof to any such my child or grandchild as the said trustees may deem expedient for his or her use and benefit; or to expend the whole or any part thereof in the maintenance and education of any child or children of such my child, or the issue of any, or for the support and maintenance of the family of such my child."

The meaning of the last provision in this clause, and its effect on the previous gift in trust for the benefit of the grandchildren of the testator, the daughters of Sarah Ann Merry, constitute the subject matter concerning which the present controversy has arisen. On the one hand, it is contended that the trustees have the authority and power under this provision to retain and withhold any portion of the income of the property devised in trust for the benefit of the grandchildren which they may deem

expedient, and instead of paying it over to them or holding it for their eventual use, to convert it into capital and reinvest it to be held in trust in like manner as the principal or original sixth part of the testator's estate is held by them under the will. In other words, that the grandchildren take no vested right or interest in the income of the sixth part; that there was no gift thereof to them, by force of which they can ask or claim any other or further amount than the trustees may see fit from time to time to pay over to them ; but that the trustees are clothed with a power, by which they are authorized to convert income into capital, and thereby to deprive the grandchildren of any right or interest therein, except such as may accrue to them from an increase of the amount of the trust fund in the hands of the trustees. On the other hand, it is urged that, by the true construction of this provision, in connection with other parts of the will, the grandchildren take a right or interest in the income, rents and profits of the one sixth, which was devised in trust for their benefit; that it was intended to be a gift to them of the income as it accrued, by virtue of which they acquire a title to and property in it; that it was not intended to vest in the trustees a mere naked power to pay over or withhold the income as they might deem expedient, from time to time, subject to no control or supervision by or in behalf of the grandchildren ; but that it was the intent of the testator only to vest in the trustees a discretion to be exercised by them in determining as to the mode and time of making payments of the income to said *cestuis que trust*, according to their circumstances and condition, instead of being paid over quarter-yearly or otherwise, as it accrued and was received by the trustees.

If we were confined to the language of this specific provision, and were compelled to interpret it literally, without reference to other parts of the will, we should be strongly inclined to hold that the grandchildren took no right or interest in the income beyond a mere capacity to receive so much of the amount thereof as the trustees might deem it expedient to pay. Such is the import of the language taken by itself, without regard to the context, or to the intent of the testator as manifested by other

parts of the will. But although in the interpretation of wills, as in construing all other written instruments, the ordinary and obvious meaning of language is to be regarded, it is not to be strictly adhered to when it conflicts with the clear intent of the testator as indicated by other unequivocal provisions, or is inconsistent with or repugnant to other parts of the same instrument. The cardinal principles of construction require that the general intent of the testator shall govern and control special provisions of a doubtful and uncertain meaning, and that this intent is to be gathered, not solely by looking at the particular language of a single clause, but by regarding other parts of the instrument, in connection with the situation and circumstances of the testator at the time of making his will, the subject matter of the bequest, and the condition and relation to the testator of those whom he intended as the objects of his bounty.

The general intent of the testator in disposing of his estate in the case before us is not left in any doubt. It is declared in clear and unequivocal terms in the second clause of the will, by which he gives to two of his daughters legacies in money for the purpose of making their shares of his estate equal to those of his sons and his other daughter, to whom he had made advancements during his life. He distinctly states his wish to be " to do equal and exact justice " to all his children. In pursuance of this intent, he directs his estate to be divided into " six equal parts or shares," being the number necessary to make an equal division or distribution of his property among his children who were living, and to give to those who represented his deceased daughter the share to which their mother would have been entitled. Two of these shares he gives to his sons, George and David, absolutely, and the other four he devises in trust by the seventh clause already cited, declaring that the property so devised in trust is intended for the comfortable support and maintenance of his children and grandchildren, " for whose benefit said trust has been created." These provisions clearly indicate that it was the intent of the testator that all his children should share equally in his estate, and that his grandchildren should take the same interest therein as their mother would

have received if she had been living at his decease. By creating
a trust and devising four sixths or shares of his estate to trustees
for the benefit of three of his children and of his grandchildren,
he did not intend to destroy this equality. The object of the
seventh clause, as shown by its whole structure, was not to take
away or in any degree to impair the right of the *cestuis que trust*
to the beneficial use and énjoyment of the income which might
accrue from the shares or sixth parts of his estate. This perfect
equality of distribution and enjoyment of the testator's estate,
which he seems to have anxiously provided for, would be effec-
tually defeated, if the clause of the will which has given rise to
the present controversy is to be construed as vesting in the trus-
tees the power to withhold the whole or any portion of the in-
come from the children and grandchildren at their pleasure, and
to convert it into capital. If there is no gift of the income to
the children and grandchildren, but only a capacity or privilege
to receive such amount thereof as the trustees may think it ex-
pedient to allow them, then it follows that the power of the
trustees is absolute, and the exercise of their discretion in the
disposition of the income would be subject to no control or super-
vision. If there is no property or interest in the income vested in
the children or grandchildren, they can assert no claim and enforce
no right as against the trustees. A naked power in them to deter-
mine the amount which they were to pay over, accompanied by no
gift or beneficial use of the income, except that which was to arise
or grow out of the exercise of the power, would place in the
hands of the trustees an authority to measure out the bounty of
the testator at their discretion, and leave to those for whose
benefit the testator declared the trust to have been created no
right to revise or call in question their decision, however un-
just or unequal it might be in its operation. *Beevor* v. *Par-
tridge*, 11 Sim. 229, 234. Such a conclusion seems not only to
be clearly in contravention of the general intent of the testator,
but to be most unreasonable, in view of the fact that two of the
trustees in whom such an extraordinary power is supposed to
be vested have a direct interest in withholding payment of the
income, and in increasing the capital, inasmuch as, in the event

24*

of the death of the *cestuis que trust* without issue, they would be entitled as remainder-men to a portion of the principal thus accumulated.

But the construction of the clause, which gives to the trustees the power to convert income into capital by withholding it from the children and grandchildren, appears to us to be untenable, not merely because it contravenes the clearly expressed intent of the testator, in seeking to make an equal distribution of his estate and to do exact justice to all his children, but also for the reason that, on a careful consideration of the previous provisions in the same clause, we think such an interpretation would be inconsistent with and repugnant to the express trust, which the testator carefully and with studious detail has thereby declared and established in favor of his children and grandchildren. Looking at these provisions without reference to that part of the clause which has given rise to the present controversy, and construing them according to their proper legal import, it is clear that the children and grandchildren took a vested right or interest in their several proportions of the income which might accrue on the shares or parts of his estate which are given to the trustees. The direction to the trustees to distribute and divide the net gains and income of the whole of the trust property into four equal parts, and to pay over one of them to each of his three children, and the remaining fourth part to pay over and distribute equally among his grandchildren, was equivalent to an absolute bequest thereof to them. They thereby became the equitable owners of the income as it accrued. This clear and plain gift ought not to be defeated by any subsequent provision, unless it is expressed in language so unequivocal as to leave no room for doubt as to its construction. The rule is well settled that an ambiguous or doubtful clause cannot be permitted to control or vary the interpretation of a previous provision, the meaning of which is free from doubt. Where a testator first makes a gift in terms which clearly confer a vested interest, the addition of equivocal expressions of a contrary tendency will not suspend the bequest, or prevent it from taking effect absolutely. 1 Jarman on Wills, 769. *Dodson* v. *Hay*, 3 Bro. C. C. 404, 409

*Montgomerie* v. *Woodley*, 5 Ves. 522. In the present case, if it be held that the clause in question clothes the trustees with the power to withhold at their discretion from the children and grandchildren the income, or a part of it, and convert it into capital, it is obvious that the previous absolute gift thereof to them is defeated. Such a construction substantially annihilates the trust, takes away the right of the *cestuis que trust* to the income, and converts the trust into a mere power. It destroys the previous bequest, and substitutes in place of a title to the rents, income and profits of a share of the testator's estate derived from his bounty, a mere right or privilege of receiving such portions thereof as the trustees may from time to time think it expedient to pay. By this interpretation, the children and grandchildren have no equitable interest in the income. No title is vested in them by the will. The only right which they can have arises from the act of payment by the trustees. There is nothing in the language of the clause in controversy which requires us to adopt a construction so contrary to the manifest intent of the testator and so repugnant to the previous provisions of the will creating a trust for the benefit of his children and grandchildren. On the contrary, it appears to us to be susceptible of a reasonable interpretation, which will give full effect to the clause and at the same time harmonize with and support the previous gift of the income. The testator, while he was desirous of bestowing his estate in such manner that his children should share therein in equal proportions, and his grandchildren should have the benefit of their parent's portion, was also anxious that they should not be subjected to the risk of being deprived of the enjoyment of the income of their respective proportions by the improvidence of the husbands of his daughters, or by its being appropriated to the payment of their debts, or of those of his son John, who, as appears by the third clause of the will, was in embarrassed circumstances. His grandchildren, too, at the time of making his will, were quite young, and it was probable that for some time after his decease they would not be in a situation to render it necessary or proper that they should receive the whole income of the share which was given

in trust for their benefit. It was therefore necessary to vest in the trustees a discretion, in the exercise of which they migh* control and regulate the times and mode of payment of the income to which the *cestuis que trust* were entitled. By virtue of the previous clear and absolute gift of the income, accompanied by a direction to pay it " quarter-yearly or otherwise, as is most convenient," the children and grandchildren would have a right to require the payment of it by the trustees as it accrued, or as it was convenient and reasonable for them to pay it over in reference to the time of its receipt. The provision vesting in the trustees the right to exercise a discretion in paying over only so much of the income as they might deem expedient, or to expend the whole or part of it for the support of the children and grandchildren, may well be construed as designed to qualify this right of the *cestuis que trust* to receive, and the obligation of the trustees to pay over, the income according to the terms of the absolute gift, and to enable them to regulate their payments from time to time according to the circumstances and situation of the *cestuis que trust.* If, for example, by the regular payment of the income as it accrued to any one of the daughters, there was danger of its misappropriation by her husband after it was received by her, it would be competent for the trustees to withhold the payment of a part of the income, so as to prevent it from being diverted from the support and maintenance of the daughter ; or, instead of paying it over, to expend it in her behalf. So if the grandchildren, either from their youth or other cause, did not require the whole income for their reasonable use and support, the trustees might, in the exercise of the discretion vested in them, retain a portion of it in their hands for their subsequent use. This interpretation gives full scope and operation to the language of this provision. By it the gift of the income was not revoked, but a discretion was given to the trustees either to postpone the time of payment or to expend it for the use and benefit of the *cestuis que trust.* The gift of the income was left in full force, with a provision to regulate the mode of its enjoyment. The discretion thus vested in the trustees gave them no power to defeat the equitable ownership in the income, which was vested

by the previous clause, but only a right to modify the time and mode in which it should be received by those for whose benefit the trust was created. Such a discretion would not be a mere naked power, the exercise of which by the trustees could not be in any way revised or controlled; but it would be subject to supervision and direction by a court of equity, if the duty of the trustees was at any time unreasonably or improperly performed.

It was strenuously urged in argument, that the testator contemplated that a portion of the income of the trust property might be withheld by the trustees and added to the capital, and form a part of the trust fund, because he provides that, on the death of his grandchildren leaving issue, the property should go to such issue, " with all interest or accumulation which may happen thereon by accession or otherwise under this will." There would be great force in this argument if the term " accumulation " could have reference to no other increase of the property devised in trust except such as might be derived from withholding the income thereon and adding it to the capital. But no such meaning is necessarily attributable to this word as used in the will. It may well be construed as referring to an increase of the estate arising from an enhancement of its value, or from profits or gains derived from changing the nature of the property by sales or exchanges, or making new investments thereof, under the authority expressly conferred on the trustees by a subsequent clause in the will. Or it may be interpreted as signifying only profits in the nature of income. In this last sense it is manifestly used by the testator in a previous clause of the will, in which he directs the trustees to divide the net gains and income of the trust property into four equal parts, after they shall have collected the rents of the real estate and the " dividends, accumulation, interest and increase of the personal estate." The " accumulation " here intended could not comprehend any reservation of income added to capital, because it was to form part of the income to be divided, and must have been reckoned as part of the profits in ascertaining the shares of the *cestuis que trust* therein, before any portion of them could be withheld

by the trustees. Certainly a word of such doubtful import cannot control the previous explicit gift of the income.

Nor is it to be overlooked, in giving an interpretation to this clause of the will, that the testator has taken pains to insert a special and distinct provision to guard against any " sale, alienation, pledge, mortgage, attachment, lien, or any other charge or incumbrance whatsoever" of or upon the income of said trust fund by his children or grandchildren, for whose benefit the trust was created. It is obvious that this was a useless and unnecessary precaution, if it was intended by him that they should take no valid right or interest in the income. If they had no title to or property in it, they could make no valid sale, pledge or conveyance of it.

We are led by these considerations, and others of a similar nature derived from other parts of the will, to the conclusion that, by the true construction of the will, the trustees are not authorized to retain a part of the rent, income and interest of that portion of the testator's estate which was devised in trust for the benefit of his grandchildren, and to reinvest the same as capital to be held in trust under the provisions of the will ; but that the grandchildren had a vested equitable interest therein as the same accrued and was received by said trustees, subject, however, to the exercise of a discretion by the trustees as to the mode and times in which the said income should be paid over to said grandchildren, or expended in their behalf. It follows that the share or portion of the income which accrued during the life of Mrs. Frothingham, on that part of the estate which was devised in trust for her benefit, and which was received by the trustees and not paid over to her during her lifetime, belongs to her administrator, and that the same ought to be paid over to him. As to the share of the income which has accrued on that part of the estate held by the trustees for the benefit of the granddaughter, Mrs. Bradley, and been received by the trustees and not paid over to her, she is entitled to a decree that the same be paid to her according to the terms of the bequest. It is not alleged or shown by the trustees that, in the exercise of a sound discretion, there is any valid or sufficient reason for

withholding from her the enjoyment of the income to which she is entitled. On the contrary, being a married woman with children, in the absence of any danger of a misapplication of the money, she ought to receive it according to the terms of the bequest.

In ascertaining the amount which the trustees are to pay over, we can see no reason for excluding the income which accrued on the trust property while it was in the hands of the executors, and which was afterwards paid over to the trustees. The *cestuis que trust* were entitled to the income from the time of the death of the testator. *Minot* v. *Amory*, 2 Cush. 377. *Lovering* v. *Minot*, 9 Cush. 151. *Treadwell* v. *Cordis*, 5 Gray, 341, 352. Gen. Sts. *c.* 97, § 23. *Decree accordingly.*